UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE ROBERSON,<br><br>               Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. EDCV 10-0236-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**PROCEEDINGS**

On February 26, 2010, Marie Roberson ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits under Title II of the Social Security Act. On September 23, 2010, the Commissioner filed an Answer to the Complaint. On November 29, 2010, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

**BACKGROUND**

Plaintiff was born on March 28, 1945, and was 52 years old on her alleged disability onset date of April 17, 1997. (AR 50.) Plaintiff filed an application for Disability Insurance Benefits on January 26, 2004, claiming she was disabled due to arthritis and bursitis. (AR 50-52, 86.)

Plaintiff's claim was denied initially on May 10, 2004 (AR 40-44), and on reconsideration on November 23, 2005. (AR 34-38.) After filing a timely request for a hearing (AR 31), Plaintiff appeared with counsel and testified before Administrative Law Judge ("ALJ") F. Keith Varni on August 21, 2007. (AR 364-75.) The ALJ issued a decision denying benefits on October 10, 2007 (the "Prior Decision"). (AR 8-15.) After the Appeals council denied Plaintiff's request for review (AR 2-4), Plaintiff appealed to this Court. On January 20, 2009, a United States Magistrate Judge issued an order vacating the Prior Decision and remanding for further proceedings (the "Remand Order"). (AR 407-15.)

Following remand, the ALJ held a hearing on October 19, 2009 (AR 683-99), and issued an unfavorable decision on December 9, 2009 (the "Post-Remand Decision"). (AR 379-87.) The ALJ determined that Plaintiff had a "severe medically determinable impairment of the musculoskeletal system" during the period from her alleged onset date of April 17, 1997, through her date last insured of December 31, 2002, but she was nonetheless capable of performing her past relevant work as a school security advisor and account assistant clerk. (AR 382, 386.) Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. (AR 387.) The Appeals Council did not review the ALJ's decision, which became the final decision of the Commissioner. See 20 C.F.R. § 404.984(d). Plaintiff then commenced the present action.

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, there are four disputed issues:

1.  Whether the ALJ complied with the Remand Order's requirement to consider properly the demands of Plaintiff's past relevant work;

      2.      Whether the ALJ made proper findings regarding Plaintiff's ability to handle objects and to perform work-related tasks with her right upper extremity;

      3.      Whether the ALJ properly considered the severity of Plaintiff's alleged mental impairment and properly rated her mental functional limitations; and

      4.      Whether the ALJ properly considered the opinion of Dr. Hamid Rahman.

(JS at 3.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

///

///

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## DISCUSSION

### A.  The ALJ's Decision

In this case, the ALJ determined at step one of the sequential evaluation that Plaintiff did not engage in substantial gainful activity from April 17, 1997, her alleged onset date, through December 31, 2002, her date last insured. (AR 382.)

At step two, the ALJ determined that Plaintiff suffered from "a severe medically determinable impairment of the musculoskeletal system." (AR 382.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 382.)

The ALJ found that Plaintiff had the RFC "to perform a limited range of light exertion. [She] could lift 20 pounds occasionally and 10 pounds frequently. She could stand and walk for 6 hours out of an 8-hour work day, and she could sit for 6 hours out of an 8-hour work day. [Plaintiff] was limited to occasional operation of hand controls with her right upper extremity. She could not climb ladders, ropes, or scaffolds. [She] could occasionally climb ramps and stairs, and she could occasionally balance, stoop, kneel, crouch, and crawl.

[Plaintiff] could not perform above the shoulder activities with the right upper extremity, such as reaching. She was not limited in gross handling with the right upper extremity, but she was limited to occasional torquing and gripping with the right upper extremity. She was precluded from concentrated exposure to extreme cold and vibration. She was precluded from moderate exposure to unprotected heights." (AR 382.)

At step four, the ALJ relied on the testimony of a vocational expert in determining that Plaintiff could perform her past relevant work as a school security advisor and account assistant clerk, and therefore concluded that Plaintiff was not disabled. (AR 386-87.)

**B. The ALJ Properly Considered the Demands of Plaintiff's Past Relevant Work.**

Plaintiff contends that the ALJ did not comply with the Remand Order's requirement to make specific findings of fact in explaining whether Plaintiff can perform her past relevant work. (JS at 3-7, 10.) The Court disagrees.

At step four, Plaintiff has the burden of showing that she could not perform her past relevant work as actually performed or as generally performed. Pinto, 249 F.3d at 844-45. However, the ALJ still has a duty "to make the requisite factual findings to support his conclusion," id. at 844, namely: (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's residual functional capacity would permit a return to her past job or occupation. SSR 82-62. To determine the general demands of the claimant's past relevant work, the ALJ may refer to the Dictionary of Occupational Titles ("DICOT") or rely on the testimony of a vocational expert. Pinto, 249 F.3d at 844-47; Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

Here, the ALJ made the requisite factual findings. The ALJ first determined that Plaintiff had the RFC to perform a limited range of light work, as described above. (AR 382.) The ALJ then properly relied on the vocational expert, who used the DICOT to determine the demands of Plaintiff's past work. (AR 386, 697.) The ALJ summarized that Plaintiff's "past

1  relevant work as a school security supervisor is generally performed as skilled work (SVP 6)
2  at the light exertional level; and [Plaintiff's] past relevant work as an accounting clerk is
3  generally performed as skilled work (SVP 5) at the sedentary exertion level." (AR 386.)
4  Consistent with the vocational expert's testimony, the ALJ then concluded that "[i]n
5  comparing [Plaintiff's RFC] with the physical and mental demands of this work, I find that
6  [Plaintiff] was able to perform it as generally performed." (AR 387, 697.) The ALJ's
7  determination at step four contains the requisite findings and is supported by substantial
8  evidence. Accordingly, a remand or reversal on this basis is not warranted.[2]

### C. The ALJ Properly Determined Plaintiff's Functional Limitations Regarding her Right Upper Extremity.

Plaintiff argues that "the ALJ provided a vague and ambiguous description of Plaintiff's ability to perform work related activities with her right upper extremity." (JS at 11.) Plaintiff essentially makes two arguments: (1) the demands of the account assistant clerk job exceed her functional limitations; and (2) the ALJ's determinations that Plaintiff can only grip occasionally with her right upper extremity but has no limitation in gross handling are inherently contradictory. (JS at 11-13.) The Court finds neither argument persuasive.

As discussed above, the ALJ relied on a vocational expert and the DICOT in determining that Plaintiff was capable of performing her past relevant work as an account

---

[2] Plaintiff's argument that the ALJ erred in determining that her job as a school security supervisor qualifies as past relevant work because she allegedly performed it outside the relevant time period (JS 5-6) is unavailing. The ALJ assessed whether Plaintiff was disabled from her alleged disability onset date of April 17, 1997, through her date last insured of December 31, 2002. Plaintiff's "past relevant work" extends to fifteen years before this period. See 20 C.F.R. § 404.1565(a) ("We do not usually consider that work you did 15 years of more before the time we are deciding whether you are disabled . . . applies."). Because Plaintiff worked as a school security supervisor as late as April 1988 (AR 79), within this fifteen-year period, the ALJ properly considered this occupation to be part of her past relevant work. Even if the ALJ erred in considering the school security supervisor occupation as part of Plaintiff's past relevant work, the error would be harmless because the ALJ's step four conclusion also rests on Plaintiff's ability to perform the occupation of account assistant clerk, which Plaintiff does not dispute the ALJ properly considered as part of her past relevant work.

assistant clerk. ALJs routinely rely on the DICOT in determining the skill level of a claimant's past work. Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 404.1566(d)(1). The DICOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). "[I]n order for an ALJ to rely on a job description in the [DICOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847 (citing Johnson, 60 F.3d at 1435).

      Plaintiff argues that the account assistant clerk occupation's requirements of frequent reaching and handling conflict with her capacity to perform only occasional gripping with the right upper extremity. (JS at 11-12.) However, the vocational expert compared Plaintiff's limitations to the requirements for the occupation of account assistant clerk and testified that she would be capable of performing the job. The vocational expert further testified that his conclusions were consistent with the DICOT. (AR 697.) Indeed, Plaintiff's lack of limitation in gross handling does not conflict with the account assistant clerk occupation's requirement of frequent handling. See DICOT 216.482-010. Moreover, Plaintiff's limitations in torquing and gripping with the right upper extremity appear to be conscribed to particular functions, such as using "tools" and "dials," according to the State Agency physician whose opinion the ALJ adopted and upon which the vocational expert relied. (AR 117; see AR 12-13, 697.) The job description for account assistant clerk does not appear to require the use of tools or dials. See DICOT 216.482-010. The ALJ did not err in concluding that Plaintiff is capable of performing the job of account assistant clerk despite her limitations in torquing and gripping with the right upper extremity. A reversal or remand on this basis is not warranted.

      Plaintiff next argues that the ALJ "failed to provide a clear description of Plaintiff's limitations in regard to the use of her right upper extremity." (JS at 12.) Plaintiff elaborates that "the act of handling objects involves gripping because, obviously, one would not be able to manipulate and handle objects with extended hands." (Id.) Therefore, Plaintiff concludes, the ALJ's RFC determination is inherently ambiguous. The Court acknowledges that

Plaintiff's argument has some initial appeal, but Plaintiff does not cite any evidence in support of her conclusion, which contradicts the vocational expert's testimony.  In addition, as explained above, Plaintiff's limitation in gripping appears to be confined to a small subset of occupational activities.  Moreover, Plaintiff does not challenge the ALJ's conclusion that she was capable of performing her past relevant work as a school security advisor.  The school security advisor position generally requires only occasional handling, comporting even under Plaintiff's theory with her limitation to occasional gripping.  See DICOT 372.167-014.  Therefore, even if the ALJ erred in failing to limit Plaintiff to occasional handling, the error was harmless because it was "inconsequential to the ultimate nondisability determination." See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).  A reversal or remand on this basis is not warranted.

**D.     The ALJ Properly Considered Plaintiff's Alleged Mental Impairment.**

Plaintiff next argues that the ALJ erred in failing to determine that she has a severe mental impairment.  (JS 18-20, 23-24.)  The Court disagrees.

At step two of the sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments.  Bowen v. Yuckert, 482 U.S. at 140-41. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290.  The ALJ, however, must consider the combined effect of all the claimant's impairments on his ability to function, regardless of whether each alone was sufficiently severe. Id.  Also, the ALJ must consider the claimant's subjective symptoms in determining severity. Id.

The step two determination is a *de minimis* screening device to dispose of groundless claims. Bowen, 482 U.S. at 153-54.  An impairment or combination of impairments can be found nonsevere only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290; SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing SSR 85-28).

In this case, the ALJ determined that "[t]here is no evidence of severe depression or anxiety lasting for 12 months' duration through the date last insured." (AR 385.) The ALJ fully explained his reasoning in determining that Plaintiff did not have a severe mental impairment. He noted that Plaintiff "has had bouts of situational depression and anxiety due to finances and family issues, for which she has periodically taken anti-depressants and anti-anxiety medication," and that "[o]n December 4, 1998, Paxil was discontinued after 2-3 weeks of use as the claimant showed no evidence of depression or anxiety." (Id. (citing Exhibit 1F at 72-74, 90, 95 [AR 267, 272, 288-90]).) The ALJ also explained why he rejected the opinions of two psychiatrists (AR 386), decisions that Plaintiff does not challenge.

Instead, Plaintiff faults the ALJ for failing to discuss progress notes from a treating neurologist, Dr. Michael Saito. (JS at 18-20, 23-24.) As Plaintiff points out, Dr. Saito wrote on April 28, 2000, that Plaintiff had symptoms of vertigo and dizziness, associated with panic attacks. (AR 313.) Dr. Saito believed that these symptoms were "associated with general anxiety disorder," prescribed Celexa, and scheduled her next appointment for four months later. (AR 314.) At the next appointment, in August 2000, there was no indication that Plaintiff continued to take Celexa, but Dr. Saito noted that Plaintiff has "probable mild general anxiety disorder" and scheduled her next appointment four months later. (AR 315-16.) Plaintiff's next appointment with Dr. Saito appears to have been in March 2001. Dr. Saito wrote that Plaintiff had "some mild generalized anxiety disorder with depression" and recommended that she double her dosage of Celexa. (AR 318.) Dr. Saito appears to have next seen Plaintiff in May 2001. He did not mention Plaintiff's psychiatric issues or Celexa prescription in his notes for this visit. (AR 320.) In October 2001, Dr. Saito wrote that Plaintiff "has a component of depression and irritability" and prescribed Zoloft. (AR 324.) Next, in December 2001, Dr. Saito wrote that Plaintiff has "some depression." (AR 323.)

In sum, Dr. Saito's treatment notes indicate that Plaintiff expressed symptoms of anxiety and depression and that he prescribed medications to treat these symptoms. However, Dr. Saito, who treated Plaintiff primarily for migraine headaches, did not document any medical signs to substantiate her psychiatric complaints. (See AR 313-16, 318, 323-24.)

Substantial evidence supports an ALJ's determination at step two where "'there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment.'" Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p). Similarly, Dr. Saito did not mention any functional limitations that might have resulted from Plaintiff's symptoms. (See AR 313-16, 318, 323-24.) His reports therefore do not demonstrate that Plaintiff's psychiatric symptoms had more than a minimal effect on her ability to work. As the ALJ noted (AR 385), Plaintiff's primary care physician wrote in February 2001 that Plaintiff was having an "acute anxiety episode" based largely on her financial situation. (AR 289.) The physician expected this episode to resolve when "she has her home situation squared away," and there was no indication that the physician expected Plaintiff's symptoms to last for at least twelve months. (AR 288-90.) Substantial evidence supports the ALJ's determination that Plaintiff did not have a severe mental impairment, and any error in failing to discuss Dr. Saito's treatment notes was harmless. A reversal or remand on this basis is not warranted.

### E. The ALJ Properly Considered Dr. Rahman's Opinion.

Finally, Plaintiff argues that the ALJ did not provide legally sufficient reasons for rejecting the opinion of Dr. Hamid Rahman. (JS at 24-27, 30-31.) The Court disagrees.

#### 1. Relevant Law

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory

diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**2. Analysis**

Dr. Rahmad completed a "Medical Report" form on behalf of Plaintiff for the Public Employees' Retirement System on July 14, 1999. (AR 128-29.) Dr. Rahmad wrote that Plaintiff was diagnosed with musculoligamentous sprain of the cervical spine, suprascapular myofascitis, and impingement syndrome of the right shoulder. He stated that Plaintiff was permanent and stationary, considered her to be a qualified injury worker, and opined that her

incapacity would be permanent. He provided no other details as to her prognosis or functional limitations. (AR 128-29.)

In his Prior Decision, which was incorporated into the Post-Remand Decision (AR 380), the ALJ rejected Dr. Rahman's opinion. (AR 13.) Because Dr. Rahman's opinion was contradicted by other physicians in the record, the ALJ was required to provide specific and legitimate reasons to reject it. The ALJ did so. First, the ALJ correctly noted that the ultimate determination of disability is reserved for the Commissioner. 20 C.F.R. § 404.1527(e); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ."). The ALJ also noted that "Dr. Rahman never indicated what [Plaintiff's] restrictions were" and concluded that his "check marked boxes and terse words are vague and meaningless in the present case." (AR 13.) Indeed, Dr. Rahman's form does not describe any of Plaintiff's functional limitations or provide any discussion of what medical evidence supported his conclusions. (AR 128-29.) Moreover, the record does not contain any other evidence from Dr. Rahman. An ALJ need not accept a medical opinion "that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ did not err in rejecting Dr. Rahman's opinion.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and that this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 22, 2011         */s/ John E. McDermott*
                                  JOHN E. MCDERMOTT
                                  UNITED STATES MAGISTRATE JUDGE